# CV-08 1726

★FILED★

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

2008 APR 28 PM 3: 23

-------------------------------------------------- x

CLERK
U.S. DISTRICT COURT
E.D.N.Y.

Catherine McCloskey,                            :
                              Plaintiff,        :        CV

                                                :

            -against-                           :        COMPLAINT

                                                :
                                                        JURY TRIAL DEMANDED
Peconic Bay Medical Center, Skilled             :
Nursing and Rehabilitation Center,              :
Anna Law (sued in her                           :
Individual Capacity Pursuant to N.Y.            :
Executive Law §290 et seq.), Ron McManus :
(sued in his Individual Capacity Pursuant       :
to N.Y. Executive Law §290 et seq.),            :
Peter Chiarchiaro (sued in his Individual       :
Capacity Pursuant to N.Y. Executive Law         :
§290 et seq.) and Marta Montufar (sued in       :
her Individual Capacity Pursuant to N.Y.        :
Executive Law §290 et seq.)                     :

                                                :

                              Defendants.       :

-------------------------------------------------- x

SPATT, J.

ORENSTEIN, M.

Plaintiff, by her attorneys, SCOTT MICHAEL MISHKIN, P.C., complaining of the

Defendants alleges as follows:

## PRELIMINARY STATEMENT

This case is brought under Title VII of the Civil Rights Act of 1964 as amended,

42 U.S.C. §§ 2000 et seq. (hereinafter referred to as "Title VII"), and New York Executive Law

§§ 290 et seq. (hereinafter referred to as "NYEL"), based on Defendants' discriminatory

treatment of Catherine McCloskey ("Plaintiff") due to sexual harassment in the workplace and

retaliation of her protected activity for complaints of same, creation of a hostile working

environment, Anna Law, Ron McManus, Marta Montufar and Peter Chiacchiaro (in their

individual capacity pursuant to NYEL) for aiding, abetting, inciting, compelling, and/or coercing

the conduct giving rise to Plaintiff's sexual harassment, hostile work environment and retaliation

claims and for Defendants' failure to pay accrued wages due and owing pursuant to New York Labor Law ("NYLL").

## JURISDICTION

FIRST:        Jurisdiction is conferred upon this Court under 28 U.S.C. §§ 1331, and 1367(a), as this case is based on a federal question because of violations of Title VII.

SECOND:        The Court also has supplemental jurisdiction over this case pursuant to 28 U.S.C. §§ 1367 (a) for Plaintiff's NYEL and NYLL claims.

## VENUE

THIRD:        The unlawful practices alleged below were committed within the State of New York in Suffolk County.  At the time of the unlawful practice, Plaintiff was a resident of Suffolk County in the Eastern District of the United States District Court of the State of New York.

FOURTH:        Defendants, Peconic Bay Medical Center and Skilled Nursing and Rehabilitation Center (Hereinafter collectively referred to as "Peconic") does business in Suffolk County, in the Eastern District of the United States District Court of the State of New York. This Court is hereby the proper venue under 28 U.S.C. § 1391(b).

FIFTH:        Peconic is an employer as defined by 42 U.S.C. § 2000e.

SIXTH:        At all time relevant to this action, Peconic was the employer, as defined by 42 U.S.C. § 2000e, of Plaintiff.

SEVENTH:        At all time relevant to this action, Plaintiff was an employee within the meaning of NYLL.

EIGHTH:        At all times relevant to this action, Defendants have been an employer within the meaning of NYLL.

FACTS

NINTH:        In or about June, 2003, Plaintiff, a female, began her employment at Peconic within the Skilled Nursing and Rehabilitation Center.

TENTH:        Plaintiff has on or about twenty-three (23) years of nursing experience, including but not limited to hospital, homecare, and nursing home/rehabilitation experience.

ELEVENTH:  Plaintiff was one (1) of two (2) clinical services/Minimum Data Set ("MDS") coordinators at Peconic.

TWELFTH:   Plaintiff's job responsibilities within Peconic included, but were not limited to, completing MDS forms, coordinate MDS with team members, complete computerized care plans for both short term and long term residents, discharge planning, coordination with insurance companies for authorization of care and assisting with quality assurance including both chart audits and nurse competencies.

THIRTEENTH:        On or about July 26, 2007, Plaintiff constructively discharged her position within Peconic as a result of Defendants' sexual harassment, hostile work environment and retaliation for complaints of same.

FOURTEENTH:        Defendant Law is employed by Peconic in the Eastern District of the United States District Court of New York. This Court is thereby proper venue under 28 U.S.C. § 1391(b).

FIFTEENTH:  Law is employed by Peconic as its Director of Nurses and Director of Planetree and was Plaintiff's Immediate Supervisor and had the authority to hire, fire and discipline employees in that Department.

SIXTEENTH: Law had the power to do more than carry out personnel decisions made by others and is thereby individually liable pursuant to NYEL §296(6) *et. seq* for her discriminatory

treatment against Plaintiff.

SEVENTEENTH:    Law aided, abetted, incited, compelled, and/or coerced the acts against Plaintiff that are forbidden under NYL §296(6) *et. seq.*

EIGHTEENTH:    Law actually participated in the conduct giving rise to Plaintiff's discrimination claims and is thereby personally liable for her discriminatory and retaliatory treatment against Plaintiff under NYL §296(6) *et. seq.*

NINETEENTH:    Defendant Montufar is employed by Peconic in the Eastern District of the United States District Court of New York. This Court is thereby proper venue under 28 U.S.C. § 1391(b).

TWENTIETH:    Montufar is employed by Peconic as its Assistant Director of Nurses and was Plaintiff's Immediate Supervisor and had the authority to hire, fire and discipline employees in that Department.

TWENTY-FIRST:    Montufar had the power to do more than carry out personnel decisions made by others and is thereby individually liable pursuant to NYEL §296(6) *et. seq* for her discriminatory treatment against Plaintiff.

TWENTY-SECOND: Montufar aided, abetted, incited, compelled, and/or coerced the acts against Plaintiff that are forbidden under NYL §296(6) *et. seq.*

TWENTY-THIRD:    Montufar actually participated in the conduct giving rise to Plaintiff's discrimination claims and is thereby personally liable for her discriminatory and retaliatory treatment against Plaintiff under NYL §296(6) *et. seq.*

TWENTY-FOURTH: Defendant McManus is employed by Peconic in the Eastern District of the United States District Court of New York. This Court is thereby proper venue under 28 U.S.C. § 1391(b).

TWENTY-FIFTH:    McManus is employed by Peconic as its Administrator of the Skilled Nursing Facility and Vice President of Peconic Bay Medical Center and was Plaintiff's Immediate Supervisor and had the authority to hire, fire and discipline employees in that Department.

TWENTY-SIXTH:    McManus had the power to do more than carry out personnel decisions made by others and is thereby individually liable pursuant to NYEL §296(6) *et. seq* for her discriminatory treatment against Plaintiff.

TWENTY-SEVENTH:       McManus aided, abetted, incited, compelled, and/or coerced the acts against Plaintiff that are forbidden under NYL §296(6) *et. seq.*

TWENTY-EIGHTH: McManus actually participated in the conduct giving rise to Plaintiff's discrimination claims and is thereby personally liable for her discriminatory and retaliatory treatment against Plaintiff under NYL §296(6) *et. seq.*

TWENTY-NINTH:    Defendant Chiacchiaro was employed by Peconic in the Eastern District of the United States District Court of New York. This Court is thereby proper venue under 28 U.S.C. § 1391(b).

THIRTIETH:  Chiacchiaro was employed by Peconic as its Director of Human Resources and was Plaintiff's Immediate Supervisor and had the authority to hire, fire and discipline employees in that Department.

THIRTY-FIRST:    Chiacchiaro had the power to do more than carry out personnel decisions made by others and is thereby individually liable pursuant to NYEL §296(6) *et. seq* for her discriminatory treatment against Plaintiff.

THIRTY-SECOND:   Chiacchiaro aided, abetted, incited, compelled, and/or coerced the acts against Plaintiff that are forbidden under NYL §296(6) *et. seq.*

THIRTY-THIRD:     Chiacchiaro actually participated in the conduct giving rise to Plaintiff's discrimination claims and is thereby personally liable for her discriminatory and retaliatory treatment against Plaintiff under NYL §296(6) *et. seq.*

THIRTY-FOURTH:   The sexual harassment in which Plaintiff was subjected to by Defendants is of such quality or quantity as to be severe and/or pervasive.

THIRTY-FIFTH:     Looking at the totality of the circumstances, including the frequency of Defendants' conduct, its severity, that said conduct was humiliating and that it interfered with Plaintiff's work environment.

THIRTY-SIXTH:     Plaintiff was the subject of unwelcome sexual harassment by Defendants'.

THIRTY-SEVENTH: The sexual harassment affected Plaintiff's terms, conditions, and/or privileges, of her employment.

THIRTY-EIGHTH:   Peconic knew of the sexual harassment and failed to take remedial action.

THIRTY-NINTH:     Plaintiff suffered sexual harassment so severe or pervasive as to alter the conditions of her employment and which created a hostile working environment.

FORTIETH:   Plaintiff suffered sexual harassment so sever or pervasive and retaliation in opposition of sexual harassment and for complaints of same as to alter the conditions of her employment and which created a hostile working environment leading to her constructive discharge from Peconic.

FORTY-FIRST:     The hostile work environment Plaintiff was subject to at Defendants' continued throughout her employment which lead to her constructive discharge.

FORTY-SECOND:   Said hostile environment was due to Defendants' continued sexual

harassment of Plaintiff, retaliation for complaints of same and failure to enact prophylactic measures to stop said harassment.

FORTY-THIRD: Plaintiff's hostile work environment claim is comprised of a series of separate acts over the course of her employment at Peconic that collectively constitute one unlawful employment practice.

FORTY-FOURTH: Plaintiff used to work closely with Law and during this time period she was constantly subjected to her discrimination and sexual harassment.

FORTY-FIFTH: On many occasions, Law spoke to Plaintiff about Law's practice of wearing a thong.

FORTY-SIXTH: On one occasion, Law presented Plaintiff with a red thong and stated in a sexually suggestive manner that it was a present for her husband.

FORTY-SEVENTH: Law proceeded to show Plaintiff a thong sanitary napkin.

FORTY-EIGHTH: Plaintiff felt uncomfortable by Law's sexually suggestive discussion of woman's underwear in the workplace.

FORTY-NINTH: On another occasion, Law criticized Plaintiff's hairstyle and discussed same with Plaintiff's co-workers, Sandra Rosendahl ("Rosendahl"), MDS Coordinator and Sharon Buenten ("Buenten"), Director of Admissions.

FIFTIETH: Subsequent to Law discussing her critique of Plaintiff's hairstyle with her co-workers, Law took Plaintiff into Peconic's bathroom and played with her hair in a sexually suggestive manner until it was to her satisfaction.

FIFTY-FIRST: As a result of Law touching Plaintiff's in a sexually suggestive manner, Plaintiff wore her hair differently in an attempt to avoid Law's sexual advances and further intimate contact.

FIFTY-SECOND:      On another occasion, in the presence of Buenten and McManus, Law said to McManus that "Cathy's (Plaintiff) boobs fall so far to the side that they wind up on her back."

FIFTY-THIRD:      Plaintiff felt humiliated and uncomfortable by Law objectifying her body in front of co-workers.

FIFTY-FOURTH:      McManus did not reprimand Law for her sexually harassing comments.

FIFTY-FIFTH:      This was an example to Plaintiff that she was subject to sexual harassment which was so pervasive as to alter the conditions of her employment and created a hostile work environment.

FIFTY-SIXTH:      On another occasion, Law and her husband were standing at the nurse's station within Defendants' facility, when Law yelled down the hallway to Plaintiff in sexually suggestive manner, "nice legs."

FIFTY-SEVENTH:   Law's Husband then commented, "Yea, nice legs."

FIFTY-EIGHTH:      Said sexually suggestive comments where made in the presence of Peconic staff members and patients.

FIFTY-NINTH:       Said sexually suggestive comments caused Plaintiff great embarrassment and humiliation with her colleagues.

SIXTIETH:    On another occasion, Plaintiff was standing outside the conference room in the Skilled Nursing Facility ("SNF"), when Law said to her, "Nice boobs. Are they real?"

SIXTY-FIRST:      Subsequent to Law's statement, Law reached forward and touched Plaintiff's right breast and commented, "Wow, they are real."

SIXTY-SECOND:     This was a further example to Plaintiff that she was subject to sexual harassment which was so pervasive as to alter the conditions of her employment and which created a hostile work environment.

SIXTY-THIRD:     On another occasion, while in Defendants' nursing office, Law told Plaintiff and Rosendahl that she had sex with her husband in the bathroom of Joseph Van de Wetering ("Van de Wetering"), Peconic Board Member's home during a party.

SIXTY-FOURTH:     Plaintiff was uncomfortable upon hearing Law's sexually suggestive story.

SIXTY-FIFTH:     This illustrates Defendants' sexual harassment against Plaintiff, as Law continued to direct her sexually suggestive comments toward Plaintiff.

SIXTY-SIXTH:     On another occasion, Plaintiff told Law that she was feeling sick to which Law replied in a sexually suggestive manner, "Obviously, you haven't been well, seeing how you've not been taking care of your fingernails and toenails."

SIXTY-SEVENTH:   Plaintiff was embarrassed and humiliated by Law's comments and staring of her body.

SIXTY-EIGHTH:     On another occasion, in the hallway, outside of Defendants' nursing office, Law stared at Plaintiff in a sexually suggestive manner and said "nice breasts."

SIXTY-NINTH:     Law then looked at Plaintiff's buttocks and called her a bombshell.

SEVENTIETH:      Subsequent to said encounter, Plaintiff attended the department/head team meeting.

SEVENTY-FIRST:    At said meeting, and in front of Plaintiff's co-workers, Law asked Paul Furbeck ("Furbeck"), Assistant Director of Rehabilitation Servies, if he could concentrate, referring to Plaintiff's body.

SEVENTY-SECOND:        Subsequent to Law's comment to Furbeck, Plaintiff told Law that her body and dress are not to be commented on.

SEVENTY-THIRD:   Law ignored Plaintiff's request and stated in front of Abinette "aren't they beautiful" as Law pointed to Plaintiff's breasts.

SEVENTY-FOURTH:        Law then asked Plaintiff to put her work papers in front of her breasts, stating that she could not concentrate because of Plaintiffs boobs.

SEVENTY-FIFTH:   Law further stated "anybody who is talking to you today is thinking boobs and looking at your boobs."

SEVENTY-SIXTH:   Plaintiff felt humiliated and degraded in front of her co-workers.

SEVENTY-SEVENTH:        This was a further example to Plaintiff that she was subject to sexual harassment which was so pervasive as to alter the conditions of her employment and which created a hostile work environment.

SEVENTY-EIGHTH: On another occasion Law stared at Plaintiff's body and said in a sexually suggestive manner "you haven't been smiling lately. You need to smile all the time, no matter what is going on in your life."

SEVENTY-NINTH:   Law further added in a sexually suggestive manner "you are not smiling enough. All day today you are to smile at me, and I will smile back."

EIGHTIETH:  In or about April 2007, Plaintiff was ordered by Law to cover the desk at Defendants' nursing station while Abinette attended to personal errands.

EIGHTY- FIRST:        Subsequently, Law instructed Abinette not to speak to Plaintiff regarding favors Law bestowed upon her.

EIGHTY-SECOND:   Law further instructed Buenten not to speak to Plaintiff and that Plaintiff was not to step foot in Buenten's office, even though Plaintiff needed to speak with her

regarding patients.

EIGHTY-THIRD:     Defendants' actions in singling out Plaintiff was in retaliation for her opposition and failure to concede to Law's sexual harassment towards her, which altered the terms and conditions of her employment and created a hostile work environment.

EIGHTY-FOURTH:   In or about April 2007, and, upon information and belief, Law pulled Rosendahl aside and asked if she knew that "Cathy (Plaintiff), asked for vacation for the rest of the year?"

EIGHTY-FIFTH:     Upon information and belief, Rosendahl responded "Yes, I have known for a week and a half. We discussed it" to which Law replied "oh."

EIGHTY-SIXTH:     Upon information and belief, Rosendahl and Plaintiff previously submitted their vacation requests without question from Law.

EIGHTY-SEVENTH: Upon information and belief, Law attempted to put a wedge between Rosendahl and Plaintiff schedule with retaliatory animus due to Plaintiff's refusal to submit to Law's sexual harassment.

EIGHTY-EIGHTH:   Upon information and belief, Law questioning of Plaintiff's vacation was done with retaliatory animus due to Plaintiff's refusal to submit to Law's sexual harassment at Peconic.

EIGHTY-NINTH:     This is a further example to Plaintiff that she was subject to sexual harassment which was so pervasive as to alter the conditions of her employment and which created a hostile working environment.

NINETIETH:  On or about April 11, 2007, Plaintiff received a written reprimand from Law due to her failure to resume use of documentation guideline sheets.

NINETY-FIRST:     During a monthly nurses meeting, and, upon information and

belief, Law instructed Rosendahl to resume use of documentation guideline sheets and Rosendahl relayed same to Plaintiff.

NINETY-SECOND:   During said meeting, and, upon information and belief, Rosendahl was not given a deadline to resume use of documentation guideline sheets.

NINETY-THIRD:   On or about May 2, 2007, Plaintiff was called into Law's office and asked why the documentation guideline sheets were not in use by May 1, 2007.

NINETY-FOURTH:   Plaintiff told Law that a deadline of May 1, 2007, was not relayed to her, to which Law responded by telling Plaintiff to obtain an old documentation guideline sheet and use same.

NINETY-FIFTH:   Plaintiff obtained said old documentation guideline sheet, which was illegible, and left same on Law's administrative assistant's desk for correction.

NINETY-SIXTH:   Subsequent to placing said illegible documentation guideline sheet on the desk of Law's administrative assistant, Law directed Plaintiff and Rosendahl to use same.

NINETY-SEVENTH: Plaintiff complied with Law's directive and placed the documentation guideline sheets on all but five (5) charts and reported same to Montufar.

NINETY-EIGHTH.   Upon reporting same, Montufar told Plaintiff in a nasty tone that the remaining five (5) documentation guideline sheets needed to be completed by that afternoon to which Plaintiff complied.

NINETY-NINTH:   On or about May 3, 2007, Plaintiff and Rosendahl met with Law and Montufar in Defendants' conference room.

ONE HUNDREDTH: Law and Montufar issued Plaintiff a written reprimand, which she was required to sign for failure to resume use of the documentation guideline sheets by May 1, 2007.

ONE HUNDRED FIRST:     Plaintiff was then handed a new documentation guideline sheet that was to replace the illegible guideline sheets previously used.

ONE HUNDRED SECOND: Law and Montufar then met with Plaintiff at which time Law yelled at Plaintiff and asked her if she had anything to say about said issue.

ONE HUNDRED THIRD:     Defendants' act in issuing Plaintiff a written reprimand for failure to enact a policy that was not clearly stated verbally or in writing, was in direct retaliation by Law due to Plaintiff's refusal to submit to sexual harassment in the workplace.

ONE HUNDRED FOURTH: On or about May 3, 2007, Plaintiff made a formal complaint of sexual harassment and retaliation to Chiacchiaro.

ONE HUNDRED FIFTH:     During said meeting, Plaintiff relayed the incident in which Law played with Plaintiff's hair in a sexually suggestive manner, to which Chiacchiaro commented "maybe she thought you liked her playing with your hair."

ONE HUNDRED SIXTH:     Plaintiff was shocked by Chiacchiaro's callous response.

ONE HUNDRED SEVENTH:      On or about May 7, 2007, Plaintiff met with Chiacchiaro and submitted a written statement outlining Defendants' discriminatory actions.

ONE HUNDRED EIGHTH:  During said meeting, Chiacchiaro informed Plaintiff that he would review Plaintiff's written statement with McManus, notify Law of same, notify Plaintiff when he informed law of her formal complaint of discrimination and begin a formal investigation into Plaintiff's claims of sexual harassment in the workplace and retaliation for Plaintiff's refusal to submit to same.

ONE HUNDRED NINTH:     Subsequently, Plaintiff was not told if McManus reviewed her formal complaint of discrimination.

ONE HUNDRED TENTH:   On or about May 15, 2007, Plaintiff met with Chiacchiaro

to discuss her formal complaint of discrimination and retaliation submitted on or about May 3, 2007.

ONE HUNDRED ELEVENTH:      During said meeting, Chiacchiaro told Plaintiff to return the next day and advised Plaintiff that he would review her formal complaint with McManus, and discuss same with Law, at which point Defendants would begin its investigation.

ONE HUNDRED TWELFTH:      On or about May 16, 2007, Plaintiff met with Chiacchiaro again to review her formal written complaint.

ONE HUNDRED THIRTEENTH:   Subsequently, Plaintiff was not told if McManus reviewed her formal complaint of discrimination.

ONE HUNDRED FOURTEENTH:   Subsequent to Plaintiff reviewing her formal written complaint with Chiacchiaro, he failed to follow up with Plaintiff about Defendants' investigation.

ONE HUNDRED FIFTEENTH:      Subsequent to Plaintiff reviewing her formal written complaint with Chiacchiaro, McManus failed to follow up with Plaintiff about Defendants' investigation.

ONE HUNDRED SIXTEENTH:      On or about May 31, 2007, and, upon information and belief, Law was informed of Plaintiff's formal complaint of sexual harassment and retaliation at Peconic.

ONE HUNDRED SEVENTEENTH: Subsequent to Plaintiff's formal complaint of sexual harassment and retaliation in the workplace, Law has retaliated against Plaintiff, subjected her to increased supervision which altered the terms and conditions of her employment and furthered the hostile work environment at Peconic.

ONE HUNDRED EIGHTEENTH:   On or about June 1, 2007, Law spoke with Plaintiff

and Rosendahl about their post family meeting sheets in preparation for the Department of Health ("DOH") survey.

ONE HUNDRED NINETEENTH:   During said meeting, Law discussed one (1) issue with Rosendahl and seven (7) with Plaintiff.

ONE HUNDRED TWENTIETH:   Law informed Plaintiff that the policy and procedure had changed and she would speak with Doctors, not the Charge Nurse, to obtain orders.

ONE HUNDRED TWENTY-FIRST: Law's actions in discussing more issues with Plaintiff than her similarly situated co-worker, and changing protocol to require Plaintiff to speak with Doctors directly was done in direct retaliation for Plaintiff's complaints of sexual harassment in the workplace.

ONE HUNDRED TWENTY-SECOND:   On or about June 1, 2007, Plaintiff performed a medication audit on Jessica Hernandez, ("Hernandez"), Licensed Practical Nurse ("LPN") and during said audit Plaintiff learned that Carole Box ("Box"), Law's Administrative Assistant, had previously performed a medication audit on Hernandez.

ONE HUNDRED TWENTY-THIRD:   Hernandez told Plaintiff that a Nurse, not a secretary, should conduct medication audits within Peconic.

ONE HUNDRED TWENTY-FOURTH:   Plaintiff told Hernandez to report said incident if it bothered her.

ONE HUNDRED TWENTY-FIFTH:   On or about a week later, Plaintiff spoke with Lee Jenkins ("Jenkins"), Quality Assurance for the Skilled Nursing Facility, and informed Jenkins of Box's action in performing a medicaiton audit on Hernandez.

ONE HUNDRED TWENTY-SIXTH:   On or about June 21, 2007, Montufar and

Jenkins met with Plaintiff in the conference room to discuss the incident between Box and Hernandez.

ONE HUNDRED TWENTY-SEVENTH:   During said meeting, Montufar asked Plaintiff if she said Box conducted a medication audit.

ONE HUNDRED TWENTY-EIGHTH:   Plaintiff answered Montufar's question in the affirmative and stated that she told Jenkins same, which Jenkins confirmed.

ONE HUNDRED TWENTY-NINTH:   Montufar insisted Plaintiff tell her the name of the nurse but Plaintiff refused.

ONE HUNDRED THIRTIETH:   Subsequent to said meeting, Hernandez told Plaintiff that Montufar yelled at her and said Box never conducted Hernandez's medication audit.

ONE HUNDRED THIRTY-FIRST:  Subsequent to Plaintiff's conversation with Hernandez, Law called Plaintiff into her office and reprimanded her for reporting Box's actions and reiterated that the incident did not occur as Plaintiff reported.

ONE HUNDRED THIRTY-SECOND:   Defendants' action in reprimanding Plaintiff for reporting said incident to Jenkins, was done in retaliation for her complaints of Law's sexual harassment within the workplace and created a hostile working environment at Peconic.

ONE HUNDRED THIRTY-THIRD: On or about June 4, 2007, Law distributed a memorandum dated April 1, 2007, titled "Signing in and out for breaks and lunch", to all interdisciplinary team members ("IDT").

ONE HUNDRED THIRTY-FOURTH:   Said memo required Plaintiff to sign in and our for lunch breaks in addition to clocking in and out of work.

ONE HUNDRED THIRTY-FIFTH: During said meeting several IDT members were

told that the new policy did not apply to them; However, Plaintiff was required to clock in and out for breaks and lunch.

ONE HUNDRED THIRTY-SIXTH: Law's action in requiring Plaintiff, but not all IDT members to sign in and out for lunch and breaks was done in retaliation for her complaints of Law's sexual harassment in the workplace and furthered the hostile working environment at Peconic.

ONE HUNDRED THIRTY-SEVENTH:   On or about June 12, 2007, Plaintiff met with Law and Montufar in Law's office regarding a complaint by Melissa Rennee ("Rennee"), LPN.

ONE HUNDRED THIRTY-EIGHTH:   Law stated that Plaintiff accused Rennee of wrongdoing regarding treatment assessments.

ONE HUNDRED THIRTY-NINTH: Plaintiff stated that Rennee could only assess in her clinical practice in the presence of Montufar.

ONE HUNDRED FORTIETH:   Law replied that Plaintiff told Rennee that she does things by the book.

ONE HUNDRED FORTY-FIRST:   Plaintiff explained that her statement was in reference to her professional practice only.

ONE HUNDRED FORTY-SECOND:   Law the stated that Rennee was offended and upset that Plaintiff implied that she did not do conduct her position responsibilities by the book.

ONE HUNDRED FORTY-THIRD:  Subsequent to said meeting, Rennee told Plaintiff that she was not upset with her about said incident.

ONE HUNDRED FORTY-FOURTH:   Law's action in creating dissention between

Plaintiff and her co-workers was done in retaliation for her complaints of Law's sexual harassment in the workplace and furthered the hostile working environment at Peconic.

ONE HUNDRED FORTY-FIFTH:   On or about June 15, 2007, Box asked to borrow Plaintiff's key to the Nursing office

ONE HUNDRED FORTY-SIXTH:   Subsequent to relinquishing her key to the nurses office, and, upon information and belief, Box told Rosendahl that she would change Plaintiff's printing privileges and access to the nurses' station printer so she could not access the Nursing Office.

ONE HUNDRED FORTY-SEVENTH:       Plaintiff needed access to the nursing office to perform her position responsibilities on nights when office staff were not working; However, Plaintiff's key to the nursing office was never returned.

ONE HUNDRED FORTY-EIGHTH:       Plaintiff's printing privileges were re-routed to another printer at the Nurse's station, eliminating her need to access the Nursing office.

ONE HUNDRED FORTY-NINTH: Law's action in, and, upon information and belief, asking Box to confiscate Plaintiff's key to the nursing office was done in retaliation for her complaints of sexual harassment in the workplace and furthered the hostile working environment at Peconic.

ONE HUNDRED FIFTIETH:       On or about June 19, 2007, Plaintiff wrote a letter to Chiacchiaro requesting an update on his investigation into her complaints of sexual harassment and retaliation in the workplace and informed him of subsequent retaliatory acts by Law.

ONE HUNDRED FIFTY-FIRST:    Subsequent to said communication, Chiacchiaro told Plaintiff that her complaint was under investigation but did not give details as to its progress.

ONE HUNDRED FIFTY-SECOND:       As of June 20, 2007, Plaintiff had not

received a formal response from Chiacchiaro detailing his findings or investiGation as and for Plaintiff's formal complaint of sexual harassment and retaliation in the workplace.

ONE HUNDRED FIFTY-THIRD:   Chiacchiaro's failure to investigate Plaintiff's formal complaint of sexual harassment and retaliation and enact prophylactic measures to curb Defendants' discriminatory conduct was retaliatory and provided Law the ability to continue her discrimination and retaliation towards Plaintiff and furthered the hostile work environment within Peconic.

ONE HUNDRED FIFTY-FOURTH: On or about June 29, 2007, Plaintiff was subject to a Joint Commission on Accreditation of Healthcare Organizations ("JCAHO") audit and her annual evaluation with said audit and evaluation conducted by Law.

ONE HUNDRED FIFTY-FIFTH:   Plaintiff was shocked that Defendants allowed Law to perform her audit and performance evaluation when there was an open investigation into Plaintiff's complaints of sexual harassment and retaliation against her.

ONE HUNDRED FIFTY-SIXTH:   Law proceeded to give Plaintiff the worst performance evaluation she received at Defendants.

ONE HUNDRED FIFTY-SEVENTH:    Law's review contained inaccurate statements such as Plaintiff is a poor team Player; However, after said evaluation Plaintiff's team members said she was a great team member and leader.

ONE HUNDRED FIFTY-EIGHTH:  Law's action in writing a fabricated performance evaluation of Plaintiff was done in retaliation for her complaints of sexual harassment in the workplace and furthered the hostile working environment at Peconic.

ONE HUNDRED FIFTY-NINTH:    Defendants' action in allowing Law to conduct Plaintiff's performance evaluation despite Plaintiff's pending complaints of sexual harassment

and retaliation against Law was done in retaliation of her complaints of sexual harassment and retaliation.

ONE HUNDRED SIXTIETH:        In or about June, 2007, prior to Plaintiff's vacation, Law informed all Department Heads that employees who did not attend the Planetree retreat held earlier in the year would be required to attend the scheduled July 9, 2007, retreat.

ONE HUNDRED SIXTY-FIRST:    On or about July 9, 2007, Law informed Plaintiff that she was not to attend the Planetree retreat but was to stay behind to make up missed work and cover Rosendahl who was attending said retreat.

ONE HUNDRED SIXTY-SECOND:Plaintiff was the only team member who did not attend the Planetree retreat.

ONE HUNDRED SIXTY-THIRD:   Law's action in excluding Plaintiff from the Planetree retreat was done in retaliation for her complaints of sexual harassment in the workplace and furthered the hostile working environment at Peconic.

ONE HUNDRED SIXTY-FOURTH:Law continued to treat Plaintiff with retaliatory animus due to Defendants' failure to investigate Plaintiff's complaints and enact prophylactic measures to protect her from said harassment.

ONE HUNDRED SIXTY-FIFTH:    On or about July 17, 2007, a notice stating "mandatory nursing meeting for all nurses will be held on Wednesday, July 18, or Thursday, July 19, at 2:30PM" was posted on the nursing office door.

ONE HUNDRED SIXTY-SIXTH:   Plaintiff called Law's office and left a message on her voice mail stating that she had family meetings with patients but hoped to attend said meeting at the conclusion of her family meetings.

ONE HUNDRED SIXTY-SEVENTH:        On or about July 18, 2007, Plaintiff

received a call from Sarah Davidson ("Davidson"), Unit Secretary, stating that Law said Plaintiff did not have to attend the nursing meeting because she was required to cover the nurses desk.

ONE HUNDRED SIXTY-EIGHTH: At the conclusion of her family meetings, Montufar observed Plaintiff conducting her position responsibilities at the nurses desk.

ONE HUNDRED SIXTY-NINTH:   Subsequent to returning to the Nursing station, Plaintiff had to leave for another appointment.

ONE HUNDRED SEVENTIETH:   Law spoke with Montufar who approached Plaintiff at the Nursing station and Plaintiff alerted Montufar that she had to leave the nurses desk due to another appointment.

ONE HUNDRED SEVENTY-FIRST:       Montufar stated that Plaintiff could not leave the nurses desk and then accused Plaintiff of not covering the nurse's desk that afternoon, despite Montufar observing Plaintiff conducting her position responsibilities at said desk.

ONE HUNDRED SEVENTY-SECOND:     Plaintiff informed Montufar that she had an appointment to which Montufar responded by stating that plaintiff had not cover the nurses desk that afternoon.

ONE HUNDRED SEVENTY-THIRD:       Upon information and belief, Law told Montufar that Plaintiff was not covering the nurses desk, which prompted Montufar to accuse Plaintiff of not doing same.

ONE HUNDRED SEVENTY-FOURTH:     Upon information and belief, Plaintiff was the only Nurse Law instructed not to attend the mandatory nurses meeting.

ONE HUNDRED SEVENTY-FIFTH:       Law's action in excluding Plaintiff from the mandatory nurses meeting was done in retaliation for her complaints of sexual harassment within the workplace and furthered the hostile working environment at Peconic.

ONE HUNDRED SEVENTY-SIXTH:       Montufar's action, upon information and belief, in accusing Plaintiff of not performing her duties at the nurse's desk was done in retaliation for her complaints of Law's sexual harassment within the workplace and furthered the hostile working environment at Peconic.

ONE HUNDRED SEVENTY-SEVENTH:   Law continued to treat Plaintiff with retaliatory animus due to Defendants' failure to investigate Plaintiff's complaints and/or enact any prophylactic measures to protect her.

ONE HUNDRED SEVENTY-EIGHTH:       On or about July 19, 2007, Law left Plaintiff a voice mail requesting a care plan for a patient.

ONE HUNDRED SEVENTY-NINTH:       Law told Plaintiff to make the necessary changes and immediately bring the care plan to her office when completed.

ONE HUNDRED EIGHTIETH:       Subsequent to Plaintiff making said immediate changes, she attempted to deliver same to Law; However, Law ignored Plaintiff's attempts.

ONE HUNDRED EIGHTY-FIRST:  Law never called Plaintiff or made time to review the care plan.

ONE HUNDRED EIGHTY-SECOND:       Law's action in telling Plaintiff to complete urgent work and not following up or requesting said urgent work was an abuse of power and done in retaliation for her complaints of sexual harassment in the workplace and furthered the hostile working environment at Peconic.

ONE HUNDRED EIGHTY-THIRD: On or about the next day, Montufar spoke with Plaintiff in regard to the urgent care plan she worked on the previous day.

ONE HUNDRED EIGHTY-FOURTH:       During said conversation, Montufar accused Plaintiff of not getting back to her with the care plan to which Plaintiff replied that she made

three (3) attempts to contact Law.

ONE HUNDRED EIGHTY-FIFTH:  Plaintiff further stated that she attempted to give Montufar the care plan on two (2) separate occasions that day, but Montufar was unavailable.

ONE HUNDRED EIGHTY-SIXTH: Defendants' actions in telling Plaintiff to complete urgent work, not following up or requesting said urgent work and then accusing Plaintiff of not conducting her position responsibilities was an abuse of power and done in retaliation for her complaints of sexual harassment within the workplace furthering the hostile working environment at Peconic.

ONE HUNDRED EIGHTY-SEVENTH:     On or about July 26, 2007, due to Defendants' sexual harassment and retaliation for complaints of same and creation of a hostile working environment, Plaintiff constructively discharged her position at Peconic.

ONE HUNDRED EIGHTY-EIGHTH:      Upon information and belief, Law has \ sexually harassed other Peconic employees.

ONE HUNDRED EIGHTY-NINTH: During a Department Head meeting, Law grabbed Paul Furbeck's (Furbeck") shirt and ordered him to unbutton it, to which Furbeck resisted and nervously laughed.

ONE HUNDRED NINETIETH:     On other occasion Law requested Furbeck walk on the conference table and parade himself around.

ONE HUNDRED NINETY-FIRST:  Upon information and belief, Law relayed same to Andrew Mitchell ("Mitchell"), President and Chief Executive Office, Peconic Bay, and McManus at an honorary dinner.

ONE HUNDRED NINETY-SECOND:      On another occasion, and, upon information and belief, Law told Rosendahl that her clothes looked like the clothes she gave to good will.

ONE HUNDRED NINETY-THIRD: Upon information and belief, Law has not reprimanded Abinette for not alwayscompleting her two (2) weekly medication pass audits and one (1) treatment audit.

ONE HUNDRED NINETY-FOURTH:        Subsequently, on or about June 4, 2007, Plaintiff was questioned about her medication and treatment audits despite her timely completion of both.

ONE HUNDRED NINETY-FIFTH:  On another occasion, and many times thereafter, charge nurses did not complete episodic updates to care planes as they are often required to do.

ONE HUNDRED NINETY-SIXTH: On or about June 12, 2008, Law reprimanded Plaintiff for the charge nurses non-compliance even though Plaintiff was not responsible for same.

ONE HUNDRED NINETY-SEVENTH:      During the calendar year 2007, Plaintiff was entitled to over three (3) weeks vacation, totaling not less than Four Thousand One Hundred Eighty-Eight Dollars ($4188.42) and Forty-Two Cents, for which she has not been compensated.

ONE HUNDRED NINETY-EIGHTH:        Defendants' have deliberately failed to pay Plaintiff her earned wages during the calendar year 2007.

ONE HUNDRED NINETY-NINTH: Notwithstanding Plaintiff's demands, Defendants' willfully refused to pay Plaintiff's earned wages.

TWO HUNDREDTH:        Defendants' willful failure and refusal to pay Plaintiff her earned wages is in violation of NYLL §§ 190 *et seq*.

TWO HUNDREDTH FIRST: As a result of the foregoing, Plaintiff has been denied her earned wages and has incurred damages in the amount of Four Thousand One Hundred Eighty-Eight Dollars ($4188.42) and Forty-Two Cents, for which she has not been compensated.

TWO HUNDRED SECOND: As Defendants' willfully failed to comply with the provisions of NYLL, it is also liable to Plaintiff for liqudated damages equal to Twenty-Five percent (25%) of the total amount of wages due, pursuant to NYLL.

TWO HUNDRED THIRD:   Additionally, pursuant to NYLL, Plaintiff is entitled to reasonable attorney fees for bringing this action.

TWO HUNDRED FOURTH: On or about July 23, 2007, prior to filing this action, Plaintiff timely filed a written charge asserting discrimination, sexual harassment and retaliation for reporting same within three hundred (300) days of the discrimination pursuant to Title VII of the Civil Rights Act of 1964 with the U.S. Equal Employment Opportunity Commission (EEOC), in conformance with Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000 et seq.

TWO HUNDRED FIFTH:    Plaintiff has filed this action prior to the expiration of ninety days after receiving her Notice of Right to Sue from the EEOC.

TWO HUNDRED SIXTH:   The Defendants' willfully discriminated against Plaintiff in direct violation of Title VII and NYEL.

WHEREFORE, the Plaintiff demands judgment against the Defendants' as follows:

1.    For a money judgment representing actual damages for Peconic's sexual harassment against Plaintiff in violation of Title VII 42 U.S.C. § 2000e et seq., in an amount to be determined by a jury;

2.    For a money judgment representing compensatory damages for Peconic's sexual harassment against Plaintiff in violation of Title VII 42 U.S.C. § 2000e et seq., in an amount to be determined by a jury;

3.      For a money judgment representing emotional damages for Peconic's sexual harassment against Plaintiff in violation of Title VII 42 U.S.C. § 2000e et seq., in an amount to be determined by a jury;

4.      For a money judgment representing punitive damages for Peconic's sexual harassment against Plaintiff in violation of Title VII 42 U.S.C. § 2000e et seq., in an amount to be determined by a jury;

5.      For a money judgment representing actual damages for Peconic's retaliation against plaintiff for her participation in her protected activity for complaints of discrimination in the workplace due to sexual harassment in violation of Title VII 42 U.S.C. § 2000e et seq., in an amount to be determined by a jury;

6.      For a money judgment representing compensatory damages for Peconic's retaliation against plaintiff for her participation in her protected activity for complaints of discrimination in the workplace due to sexual harassment in violation of Title VII 42 U.S.C. § 2000e et seq., in an amount to be determined by a jury;

7.      For a money judgment representing emotional damages for Peconic's retaliation against plaintiff for her participation in her protected activity for complaints of discrimination in the workplace due to sexual harassment in violation of Title VII 42 U.S.C. § 2000e et seq., in an amount to be determined by a jury;

8.      For a money judgment representing punitive damages for Peconic's retaliation against plaintiff for her participation in her protected activity for complaints of discrimination in the workplace due to sexual harassment in violation of Title VII 42 U.S.C. § 2000e et seq., in an amount to be determined by a jury;

9.    For a money judgment representing actual damages for Peconic's creation of a working environment hostile to plaintiff in violation of Title VII 42 U.S.C. § 2000e et seq., in an amount to be determined by a jury;

10.    For a money judgment representing compensatory damages for Peconic's creation of a working environment hostile to plaintiff in violation of Title VII 42 U.S.C. § 2000e et seq., in an amount to be determined by a jury;

11.    For a money judgment representing emotional damages for Peconic's creation of a working environment hostile to plaintiff in violation of Title VII 42 U.S.C. § 2000e et seq., in an amount to be determined by a jury;

12.    For a money judgment representing punitive damages for Peconic's creation of a working environment hostile to plaintiff in violation of Title VII 42 U.S.C. § 2000e et seq., in an amount to be determined by a jury;

13.    For a money judgment representing actual damages for Peconic's sexual harassment against plaintiff in violation of NYEL, in an amount to be determined by a jury;

14.    For a money judgment representing compensatory damages for Peconic's sexual harassment against plaintiff in violation of NYEL, in an amount to be determined by a jury;

15.    For a money judgment representing emotional damages for Peconic's sexual harassment against plaintiff in violation of NYEL, in an amount to be determined by a jury;

16.    For a money judgment representing actual damages for Peconic's retaliation against plaintiff for her participation in her protected activity for complaints of discrimination in the workplace due to sexual harassment in violation of NYEL, in an amount to be determined by a jury;

17.     For a money judgment representing compensatory damages for Peconic's retaliation against plaintiff for her participation in her protected activity for complaints of discrimination in the workplace due to sexual harassment in violation of NYEL, in an amount to be determined by a jury;

18.     For a money judgment representing emotional damages for Peconic's retaliation against plaintiff for her participation in her protected activity for complaints of discrimination in the workplace due to sexual harassment in violation of NYEL, in an amount to be determined by a jury;

19.     For a money judgment representing actual damages for Peconic's hostile work environment against plaintiff in violation of NYEL, in an amount to be determined by a jury;

20.     For a money judgment representing compensatory damages for Peconic's hostile work environment against plaintiff in violation of NYEL, in an amount to be determined by a jury;

21.     For a money judgment representing emotional damages for Peconic's hostile work environment against plaintiff in violation of NYEL, in an amount to be determined by a jury;

22.     For a money judgment representing actual damages for Defendant McManus' sexual harassment against plaintiff in violation of NYEL, in an amount to be determined by a jury;

23.     For a money judgment representing compensatory damages for Defendant McManus' sexual harassment against plaintiff in violation of NYEL, in an amount to be determined by a jury;

24.     For a money judgment representing emotional damages for Defendant McManus' sexual harassment against plaintiff in violation of NYEL, in an amount to be determined by a jury;

25.     For a money judgment representing actual damages for Defendant McManus' retaliation against plaintiff for her participation in her protected activity for complaints of discrimination in the workplace due to sexual harassment in violation of NYEL, in an amount to be determined by a jury;

26.     For a money judgment representing compensatory damages for Defendant McManus' retaliation against plaintiff for her participation in her protected activity for complaints of discrimination in the workplace due sexual harassment in violation of NYEL, in an amount to be determined by a jury;

27.     For a money judgment representing emotional damages for Defendant McManus' retaliation against plaintiff for her participation in her protected activity for complaints of discrimination in the workplace due to sexual harassment in violation of NYEL, in an amount to be determined by a jury;

28.     For a money judgment representing actual damages for McManus' hostile work environment against plaintiff in violation of NYEL, in an amount to be determined by a jury;

29.     For a money judgment representing compensatory damages for McManus' hostile work environment against plaintiff in violation of NYEL, in an amount to be determined by a jury;

30.     For a money judgment representing emotional damages for McManus' hostile work environment against plaintiff in violation of NYEL, in an amount to be determined by a jury;

31.     For a money judgment representing actual damages for Defendant Chiarchiaro's retaliation against plaintiff for her participation in her protected activity for complaints of discrimination in the workplace due to sexual harassment in violation of NYEL, in an amount to be determined by a jury;

32.     For a money judgment representing compensatory damages for Defendant Chiarchiaro's retaliation against plaintiff for her participation in her protected activity for complaints of discrimination in the workplace due to sexual harassment in violation of NYEL, in an amount to be determined by a jury;

33.     For a money judgment representing emotional damages for Defendant Chiarchiaro's retaliation against plaintiff for her participation in her protected activity for complaints of discrimination in the workplace due to sexual harassment in violation of NYEL, in an amount to be determined by a jury;

34.     For a money judgment representing actual damages for Defendant Chiarchiaro's sexual harassment against plaintiff in violation of NYEL, in an amount to be determined by a jury;

35.     For a money judgment representing compensatory damages for Defendant Chiarchiaro's sexual harassment against plaintiff in violation of NYEL, in an amount to be determined by a jury;

36.     For a money judgment representing emotional damages for Defendant

Chiarchiaro's sexual harassment against plaintiff in violation of NYEL, in an amount to be determined by a jury;

37.     For a money judgment representing actual damages for Defendant Chiarchiaro's creation of a working environment hostile to plaintiff in violation of NYEL, in an amount to be determined by a jury;

38.     For a money judgment representing compensatory damages for Defendant Chiarchiaro's creation of a working environment hostile to plaintiff in violation of NYEL, in an amount to be determined by a jury;

39.     For a money judgment representing emotional damages for Defendant Chiarchiaro's creation of a working environment hostile to plaintiff in violation of NYEL, in an amount to be determined by a jury;

40.     For a money judgment representing actual damages for Defendant Law's retaliation against plaintiff for her participation in her protected activity for complaints of discrimination in the workplace due to sexual harassment in violation of NYEL, in an amount to be determined by a jury;

41.     For a money judgment representing compensatory damages for Defendant Law's retaliation against plaintiff for her participation in her protected activity for complaints of discrimination in the workplace due to sexual harassment in violation of NYEL, in an amount to be determined by a jury;

42.     For a money judgment representing emotional damages for Defendant Law's retaliation against plaintiff for her participation in her protected activity for complaints of

discrimination in the workplace due to sexual harassment in violation of NYEL, in an amount to be determined by a jury;

43.     For a money judgment representing actual damages for Defendant Law's sexual harassment against plaintiff in violation of NYEL, in an amount to be determined by a jury;

44.     For a money judgment representing compensatory damages for Defendant Law's sexual harassment against plaintiff in violation of NYEL, in an amount to be determined by a jury;

45.     For a money judgment representing emotional damages for Defendant Law's sexual harassment against plaintiff in violation of NYEL, in an amount to be determined by a jury;

46.     For a money judgment representing actual damages for Defendant Law's creation of a working environment hostile to plaintiff in violation of NYEL, in an amount to be determined by a jury;

47.     For a money judgment representing compensatory damages for Defendant Law's creation of a working environment hostile to plaintiff in violation of NYEL, in an amount to be determined by a jury;

48.     For a money judgment representing emotional damages for Defendant Law's creation of a working environment hostile to plaintiff in violation of NYEL, in an amount to be determined by a jury;

49.     For a money judgment representing actual damages for Defendant Montufar's retaliation against plaintiff for her participation in her protected activity for complaints of

discrimination in the workplace due to sexual harassment in violation of NYEL, in an amount to be determined by a jury;

50.    For a money judgment representing compensatory damages for Defendant Montufar's retaliation against plaintiff for her participation in her protected activity for complaints of discrimination in the workplace due to sexual harassment in violation of NYEL, in an amount to be determined by a jury;

51.    For a money judgment representing emotional damages for Defendant Montufar's retaliation against plaintiff for her participation in her protected activity for complaints of discrimination in the workplace due to sexual harassment in violation of NYEL, in an amount to be determined by a jury;

52.    For a money judgment representing actual damages for Defendant Montufar's sexual harassment against plaintiff in violation of NYEL, in an amount to be determined by a jury;

53.    For a money judgment representing compensatory damages for Defendant Montufar's sexual harassment against plaintiff in violation of NYEL, in an amount to be determined by a jury;

54.    For a money judgment representing emotional damages for Defendant Montufar's sexual harassment against plaintiff in violation of NYEL, in an amount to be determined by a jury;

55.    For a money judgment representing actual damages for Defendant Montufar's creation of a working environment hostile to plaintiff in violation of NYEL, in an amount to be determined by a jury;

56.     For a money judgment representing compensatory damages for Defendant Montufar's creation of a working environment hostile to plaintiff in violation of NYEL, in an amount to be determined by a jury;

57.     For a money judgment representing emotional damages for Defendant Montufar's creation of a working environment hostile to plaintiff in violation of NYEL, in an amount to be determined by a jury;

58.     For an award of actual damages for uncompensated wages in an amount not less than Four Thousand One Hundred Eighty-Eight Dollars ($4188.42) and Forty-Two Cents, plus interest pursuant to NYLL.

59.     For an award of liquidated damages pursuant to NYLL.

60.     For an award of reasonable attorneys fees, pursuant to NYLL.

61.     Attorney fees and costs;

62.     For equitable relief;

63.     For such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiff herein demands a trial by jury of all issues in this action.

Dated: April 28, 2008
       Islandia, New York

SCOTT MICHAEL MISHKIN, P.C.

_____
Scott Michael Mishkin, Esq. (SMM 3687)